=Amy Wilkins Hoffman (SBN 022762)
**HOFFMAN LEGAL, LLC**
99 E. Virginia Ave., Ste. 220
Phoenix, AZ  85004
Tel.  (623) 565-8851
ahoffman@hoffmanlegalaz.com

Counsel for Nikola Corporation

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nikola Corporation, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Trevor R. Milton, a Utah resident<br><br>Defendant. | Case No.:<br><br>**VERIFIED COMPLAINT** |

Plaintiff Nikola Corporation ("Nikola" or "Company"), for its claims against Defendant Trevor R. Milton ("Milton"), by and through its undersigned counsel, hereby alleges as follows:

**INTRODUCTION**

1. This is a straightforward action under the Uniform Fraudulent Transfer Act, as adopted by Arizona ("AUFTA"),[1] to preserve Nikola's ability to recover an over $165

---

[1] Other states, including Utah, Nevada, and New York, have adopted either the Uniform Fraudulent Transfer Act or the nearly identical Uniform Fraudulent Conveyance Act. *See, e.g.*, Arizona Revised Statutes § 44-1101 *et seq*; Utah Code § 25-6-101 *et seq*; Nevada Revised Statutes § 112.140 *et seq*; NY Debt. and Cred. Law § 270 *et seq*.

million award, plus pre-judgment interest, issued by a three-member panel of arbitrators in favor of Nikola and against Milton (the "Arbitration Award"), in an arbitration held under the auspices of the American Arbitration Association ("AAA"), Case No. 01-21-0017-1964 (the "Arbitration").

2. While Nikola's Petition to Confirm the Arbitration Award and For Entry of Judgment is *sub judice* with this Court (*see Nikola v. Milton*, No. CV-23-02635-PHX-DJH (D. Ariz.)) (the "Confirmation Action"), upon information and belief, Milton appears recently to have taken efforts to frustrate, hinder, and delay Nikola's efforts to collect on the Arbitration Award by selling and/or transferring—to at least 14 different custodial accounts—over 30 million shares of Nikola stock with a market value of approximately $23,000,000 (the "Transfers"), based on available Depository Trust Company settlement data ("DTC")[2] that tracks sales/transfers of Nikola stock.

3. Given that the Transfers occurred shortly after the arbitration panel issued the Arbitration Award against Milton, and shortly before Milton may incur additional substantial debts in connection with, among other things, his criminal conviction for securities fraud and wire fraud, on information and belief, Milton did not receive adequate consideration or reasonably equivalent value for the Transfers, retains possession or control of the Nikola stock included in the Transfers, and/or executed the Transfers to

---

[2] The DTC is a central securities depository that, among other things, (i) provides electronic record-keeping of securities balances, (ii) acts as a clearinghouse to process and settle almost all corporate, equity, and money market securities in the United States, and (iii) provides brokers and financial institutions with a daily record of net settlement obligations at the end of each day from trading.

conceal his assets from Nikola.

4. Accordingly, Nikola brings this action seeking relief and to enjoin Milton from fraudulently transferring and dissipating his assets.

## PARTIES, JURISDICTION, AND VENUE

5. Nikola, a publicly traded corporation duly organized and existing under the laws of the state of Delaware, with its principal office located in Phoenix, Maricopa County, Arizona, manufacturers heavy-duty semi-trucks that run on alternative fuels, such as battery-electric vehicles and fuel-cell electric vehicles.

6. Milton, a citizen of Utah, is Nikola's founder and one of its largest individual shareholders. Milton served as Nikola's Chief Executive Officer ("CEO") until June 2020, when Nikola became publicly traded, after which he served as its Executive Chairman until his resignation in September 2020. Milton was a member of Nikola's Board of Directors until his resignation in September 2020.

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue in this judicial district and the exercise of personal jurisdiction over Milton by this Court is proper: (i) pursuant to 28 U.S.C. § 1391 because Milton expressly aimed his conduct at Nikola knowing that Nikola is located in Arizona, and harmed (and continues to harm) Nikola in Arizona, the forum state, by attempting to prevent Nikola from obtaining a meaningful judgment pursuant to the Confirmation Action before this Court; and (ii) because the parties expressly consented, in a separation agreement between

Nikola and Milton, dated September 20, 2020 ("Separation Agreement"), to the "exclusive jurisdiction, forum and venue of the state and federal courts located in the State of Arizona." (*See* **Exhibit A**, ¶¶ 19, 20.)

## ALLEGATIONS OF FACT

**I.  The Underlying Arbitration & Judgment Against Milton**

9. On November 3, 2021, Nikola initiated an arbitration proceeding by filing an arbitration demand against Milton (the "Demand").

10. The parties' dispute in the underlying Arbitration arose from Milton breaching his fiduciary duties to Nikola, including his duties of loyalty and good faith, by intentionally and knowingly spreading mistruths, and reaping enormous personal profits from his wrongdoing. Milton's serial lies and breaches of fiduciary duty directly led to a whistleblower reporting his misconduct to the SEC, and a short-seller cataloging dozens of his lies in a public report—the Hindenburg Report—published on September 10, 2020, which in turn led to a deluge of subpoenas, regulatory investigations, and civil actions that caused Nikola massive harm and damages, a small portion of which Nikola sought to recover through the Arbitration.

11. Within just over two weeks of being served with the Demand, Milton began selling shares of Nikola stock, selling approximately 15 million shares worth about $164 million over an 11-day period, according to SEC Form 4 filings. Indeed, since August 2021, beginning shortly after Milton was indicted for securities and wire fraud by the U.S. Attorney's Office for the SDNY ("Criminal Action") through November 2021—shortly after Nikola's commencement of the Arbitration—SEC Form 4 filings reflect that Milton

sold or gave away more than $317 million worth of Nikola stock that he beneficially owned directly through a company wholly owned and controlled by Milton, M&M Residual LLC ("M&M").

12. Milton also has a history of selling/transferring Nikola stock for no consideration. In July 2021, just days before the federal indictment against him was unsealed, Milton, according to SEC Form 4 filings, transferred approximately 1,750,000 shares of Nikola stock (with a total approximate value of nearly $24.5 million) to his spouse for $0.

13. Because Milton's stock sales/transfers threatened Nikola's ability to obtain the relief it sought in the Arbitration, on December 2, 2021, Nikola moved before the AAA for emergency relief seeking a temporary restraining order and a preliminary injunction to maintain the status quo and prevent Milton from further selling or otherwise transferring his shares of Nikola stock until the conclusion of the Arbitration. Nikola ultimately withdrew its emergency application <u>following Milton's agreement that he would not sell any Nikola stock, directly or indirectly, during the pendency of the Arbitration absent at least seven (7) days' notice</u>.

14. Both parties thereafter spent substantial time and effort litigating the factual and legal disputes between them, and, on November 17, 2023, the arbitration panel issued and served a signed copy of the Arbitration Award, finding that Milton violated his fiduciary duties of loyalty and good faith to Nikola, and finding Milton liable for damages in excess of $165 million (plus pre-judgment interest).

15. On December 18, 2023, Nikola initiated the Confirmation Action in this

Court by filing a petition for confirmation of the Arbitration Award and for entry of judgement. (*See* Confirmation Action, ECF No. 1.) Milton filed a Motion to Vacate or Modify Arbitration Award on January 22, 2024, which has been fully briefed as of February 12, 2024 and remains *sub judice*. (*See* Confirmation Action, ECF Nos. 21, 31, and 32.)

## II. Milton is Exposed To Considerable Monetary Liability From His Misconduct

16. On October 14, 2022, Milton was convicted of securities fraud and wire fraud in the Criminal Action, and on December 18, 2022, Milton was sentenced to four years in prison, three years of supervised release, ordered to forfeit a property in Utah, and ordered to pay a fine of $1 million. (*See* Judgment, *U.S. v. Milton*, Case 1:21-cr-00478-ER, ECF No. 327 (S.D.N.Y., Jan. 17, 2024).) At the sentencing, the court in the Criminal Action also ordered the government to submit within 90 days a proposed restitution order, which also may subject Milton to additional monetary liability. (*See* Minute Entry for proceedings in *U.S. v. Milton*, Case 1:21-cr-00478-ER (S.D.N.Y., entered on January 16, 2024 and filed on December 18, 2023).)

17. Milton also is a defendant in numerous pending civil actions stemming from the same misconduct that formed the basis of his criminal conviction and Nikola's Demand, including, but not limited to: *Borteanu v. Nikola Corp., et al.*, No. 2:20-cv-01797-SPL (D. Ariz., filed Sept. 15, 2020); *In re Nikola Corp. Derivative Litigation*, No. 20-cv-01277-CFC (D. Del., filed Sept. 23, 2020); *Huhn v. Milton, et al.*, No. 2:20-cv-02437 (D. Ariz., filed Dec. 18, 2020); *In re Nikola Corp. Derivative Litig.*, Consol. C.A. No. 2022-0023-KSJM (Del. Ch., filed Jan. 7, 2022); and *Hicks, et al. v. Milton, et al.*,

6

2:22-cv-00166 (D. Utah, filed Mar. 14, 2022).  Although these actions remain pending, they may result in significant monetary judgments against Milton given his criminal conviction and the Arbitration Award.

### III. Milton Appears to Fraudulently Sell/Transfer Shares of Nikola Stock on the Cusp of Confirmation of the Arbitration Award

18.     Facing potentially staggering criminal and civil liability, and on the cusp of this Court likely confirming the Arbitration Award and entering a judgment against Milton for over $165 million (plus pre-judgment interest) in favor of Nikola, Milton appears to have begun selling/transferring shares of Nikola stock to hinder and delay Nikola's ability to collect on the Arbitration Award.

19.     On information and belief, including available DTC data, despite not having purchased or sold shares of Nikola stock since August 2022, shortly after Nikola initiated the Confirmation Action, Milton, through M&M, appears to have sold/transferred, between February 22, 2024 and March 6, 2024, over 30 million shares of Nikola stock with a market value of approximately $23,000,000 in an effort to conceal his assets from Nikola. According to information based on available DTC data, the shares of Nikola stock included in the Transfers were moved out of M&M's account in a series of trades into more than 14 different custodial accounts.  As of March 6, 2024, according to available DTC data, it appears that M&M holds approximately 21 million shares of Nikola stock— less than half the shares held before the Transfers.

20.     Upon information and belief, Milton did not receive adequate consideration or reasonably equivalent value in exchange, retains possession or control of the Nikola

7

stock included in the Transfers, and/or executed the Transfers to conceal his assets from Nikola.

21. Given the timing and circumstances, the Transfers display numerous badges of fraud and is an attempt by Milton to delay, hinder, and defraud Nikola from recovering the Arbitration Award entered in favor of Nikola and against Milton.

### IV. Milton Likely Retains Possession or Control of the Sold/Transferred Nikola Stock and Executed the Transfers to Conceal His Assets From Nikola

22. On January 26, 2024, Milton—through M&M—sent to Nikola a "Notice of Intent" to nominate five individuals for election to Nikola's Board of Directors at Nikola's 2024 annual meeting of stockholders (the "Letter"). In the Letter, M&M is identified as the "Nominating Stockholder," and Milton is identified as the only "beneficial owner of [M&M] on whose behalf the nomination is being made." The Letter also states that M&M "is the direct beneficial owner of" over 51 million shares of Nikola stock, and that all of the Nikola stock beneficially owned directly by M&M also is beneficially owned by Milton. No other individual or entity—other than Milton—is identified as having any beneficial ownership of the shares of Nikola stock owned directly by M&M, which includes the approximately 30 million shares of Nikola stock included in the Transfers.

23. Given that Milton—through M&M—is seeking to nominate five individuals for election to Nikola's Board of Directors at Nikola's 2024 annual meeting, and, as one of Nikola's largest individual shareholders, presumably seeks to maximize his voting power at the Annual Meeting, on information and belief, it is likely that Milton retains possession or control of the shares of Nikola included in the Transfers, and, therefore, executed the Transfers to conceal his assets from Nikola.

8

# COUNT I

## Fraudulent Conveyance/ Transfer Pursuant to A.R.S. § 44-1004

24. Nikola incorporates each of the foregoing allegations of this Verified Complaint as if fully set forth here.

25. Milton is indebted and otherwise obligated to Nikola in an amount exceeding $165 million pursuant to the Arbitration Award.

26. Milton has not paid any amounts to Nikola to satisfy the Arbitration Award since issuance of the Arbitration Award.

27. Upon information and belief, shortly after Nikola petitioned this Court to confirm the Arbitration Award, and enter judgement in conformity therewith, Milton made the Transfers with the actual intent to hinder, delay and defraud Nikola's efforts to collect on the Arbitration Award.

28. The Transfers occurred shortly after a substantial debt was incurred.

29. Upon information and belief, Milton did not receive adequate consideration or reasonably equivalent value in connection with the Transfers.

30. Upon information and belief, Milton retains possession or control of the property sold/transferred after the Transfers.

31. Upon information and belief, the Transfers were made with the intent to hinder and delay Nikola's ability to collect on the Arbitration Award, and to avoid having to satisfy the damages awarded to Nikola in the Arbitration Award.

32. Pursuant to Ariz. Rev. Stat. § 44-1001 *et seq.*, the sale or transfer of stock valued at approximately $23,000,000 is voidable as a fraudulent transfer.

33. As a result, Nikola has been damaged and is entitled to the remedies afforded to creditors pursuant to Ariz. Rev. Stat. § 44-1007 with respect to the Transfers.

## **PRAYER FOR RELIEF**

WHEREFORE, Nikola respectfully requests that the Court enter judgement for Nikola and against Milton and provide the following relief:

A. An order permanently enjoining Milton, until and unless Milton fully satisfies the debt incurred in connection with the Arbitration Award, pursuant to Ariz. Rev. Stat. § 44-1007(A)(4)(a), against further disposition, of the assets sold/transferred or of any other asset or property, wherever located, that is: (i) owned, controlled, held by, in whole or in part, for the benefit of, or subject to access by, or belonging to Milton; (ii) in the actual or constructive possession of Milton; or (iii) in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, limited liability company, partnership, trust, association, enterprise or any other entity directly or indirectly owned, managed or controlled by, or under common control with, Milton, except in the ordinary course of business;

B. An order setting aside the Transfers to the extent necessary to satisfy all amounts that Milton owes to Nikola pursuant to the Arbitration Award, pursuant to pursuant to Ariz. Rev. Stat. § 44-1007(A)(2);

C. An order of attachment, pursuant to Ariz. Rev. Stat. § 44-1007(A)(3), against the assets sold/transferred;

D. An order of garnishment, pursuant to Ariz. Rev. Stat. § 44-1007(A)(l), against the fraudulent transferee or the recipient of the fraudulent obligation;

  E. A levy of execution, pursuant to Ariz. Rev. Stat. § 44-1007(B), on the assets sold/transferred or its proceeds;

  F. Costs and reasonable attorneys' fees and expenses; and

  G. Such other and further legal or equitable relief that the Court may deem just and proper under the circumstances.

Dated: March 15, 2024        Respectfully submitted,

               **HOFFMAN LEGAL**

               By  /s/ Amy Wilkins Hoffman
                 Amy Wilkins Hoffman
                 99 E. Virginia Ave., Ste. 220
                 Phoenix, AZ  85004

               *Counsel for Nikola Corporation*

## VERIFICATION

STATE OF ARIZONA        )
                        )
COUNTY OF MARICOPA      )

I, Britton Worthen, state as follows:

I am Chief Legal Officer of Nikola Corporation ("Nikola"). I am authorized by Nikola to execute this Verification. I am over the age of 18 and a resident of Maricopa County, Arizona. I have read the foregoing Verified Complaint and know its contents, and I certify under penalty of perjury and pursuant to the laws of the State of Arizona that the preceding is true and correct to the best of my knowledge and belief.

_____
Britton Worthen

The foregoing instrument was acknowledged before me this ___ day of March, 2024 by _____.

_____
Notary Public

My Commission Expires:

See Attached California
All Purpose
Acknowledgment

**CALIFORNIA ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Francisco

On March 15th, 2024 before me, I. Kelly Notary Public,
_Date_ _Here Insert Name and Title of the Officer_

personally appeared Britton Mavity Worthen
_Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

[Notary Seal: J. KELLY, COMM. #2477846, NOTARY PUBLIC • CALIFORNIA, SAN FRANCISCO COUNTY, Commission Expires December 29, 2027]

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
_Signature of Notary Public_

_Place Notary Seal and/or Stamp Above_

———————— **OPTIONAL** ————————

_Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
Title or Type of Document: _____
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2019 National Notary Association