**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikola Corporation, | No. CV-24-00563-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Trevor R Milton, | |
| Defendant. | |

This matter arises out of the parties' underlying arbitration proceedings. *See Nikola Corporation v. Milton*, AAA Case No. 01-21-0017-1964. On November 17, 2023, the American Arbitration Association ("AAA"), rendered an award in favor of Plaintiff Nikola Corporation ("Nikola") and against Defendant Trevor R. Milton ("Milton") for over $165 million due to Milton's breach of fiduciary duties (the "Arbitration Award"). *See Nikola Corporation v. Milton*, 2:23-cv-02635-DJH, ECF No. 1-1 (D. Ariz. Dec. 18, 2023). Nikola filed a petition to confirm the Arbitration Award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, by way of a separate action that is also pending before this Court. *See id.*, ECF No. 1 (the "Arbitration Action").[1] Nikola has since filed an "Application for Temporary Restraining Order ["TRO"] and Expedited Discovery, and Order to Show Cause RE: Preliminary Injunction PI" (Doc. 5) (the "TRO Application"),[2]

---

[1] In opposition of Nikola's petition, Milton filed a "Motion to Vacate or Modify Arbitration Award." *Nikola Corporation v. Milton*, 2:23-cv-02635-DJH, ECF No. 20 (D. Ariz. Jan. 22, 2024).

[2] The TRO Application was originally filed before Arizona District Chief Judge G. Murray Snow. *See Nikola v. Milton*, No. 2:24-cv-00563-GMS, ECF No. 1 (D. Ariz. March 15,

arguing Milton has taken efforts to frustrate, hinder, and delay Nikola's ability to collect on the Arbitration Award. Nikola requests the Court to (1) issue a TRO that restrains Milton from transferring or depleting his assets; and (2) order expedited discovery. (*Id*. at 5).

The Court held a TRO Hearing on March 26, 2024, heard supplemental oral arguments on the TRO Application, and took the matter under advisement. (Doc. 26). The Court will deny Nikola's request for a TRO because it has not established a likelihood of success on the merits. However, the Court finds the current record raises inferences of potential fraud that warrant expedited discovery.

**I.   Background**

The TRO Application is based on Nikola's claim under the Arizona Uniform Fraudulent Transfer Act, A.R.S. § 44-1101 ("AUFTA"), alleging Milton transferred/sold various assets with the intent to hinder, delay and defraud Nikola's efforts to collect on the Arbitration Award. (Doc. 1 at ¶ 1). Nikola is a corporate manufacturer[3] of semi-trucks that run on alternative fuels, such as battery-electric vehicles and fuel-cell electric vehicles. (*Id*. at ¶ 5). Milton is Nikola's founder and one of its largest shareholders.[4] (*Id*. at ¶ 6). Milton served as Nikola's Chief Executive Officer until June 2020, when Nikola became publicly traded, after which he served as its Executive Chairman until his resignation in September 2020. (*Id*.) Milton was also a member of Nikola's Board of Directors until his resignation in September 2020. (*Id*.) Milton's resignation is governed by the parties September 20, 2020 Agreement (Doc. 1-1) (the "Resignation Agreement").

Below is a chronological timeline of events relevant to Nikola's AUFTA claim:

On July 28, 2021, the United States Government charged Milton with securities

---

2024). The action has since been transferred to this Court. (*See* Doc. 9).

The matter is fully briefed. Milton filed a Response (Doc. 20) and Nikola filed a Reply (Doc. 23).

[3] Nikola is a publicly traded corporation incorporated in Delaware with its principal office in Phoenix, Arizona. (Doc. 1 at ¶ 5).

[4] Milton is a resident of Utah. (Doc. 1 at ¶ 6).

- 2 -

fraud and wire fraud in the Southern District Court of New York, alleging Milton "engaged in scheme to defraud investors by inducing them to purchase shares of Nikola Corporation." *United States v. Milton*, 1:21-cr-00478-ER, ECF No. 1 (S.D.N.Y. July 28, 2021) (the "Criminal Action").[5]  Milton was eventually found guilty by a New York jury in 2022 for one count of securities fraud and two counts of wire fraud.  *Id*., ECF No. 213. In 2024, Milton was sentenced to four years in prison, three years of supervised release, ordered to forfeit a property in Utah, and ordered to pay a fine of $1 million.  *Id*., ECF No. 327; *see also id*., Minute Entry (S.D.N.Y. Dec. 18, 2024).

From July–August 2021, Milton transferred over 16 million shares of Nikola stock to M&M Residual LLC ("M&M"), a company wholly owned and controlled by Milton (Doc. 23-2), and his spouse.  (Docs 5-2; 5-3 (Securities and Exchange Commission ("SEC") Form 4)).

On November 3, 2021, Nikola initiated arbitration proceedings at the AAA against Milton for breach of fiduciary duty and various damages claims.  (Doc. 1 at ¶ 9); *see also* Arbitration Action, ECF No. 1-1 at 51.

From November 19–30, 2021, during the commencement of arbitration proceedings, Milton transferred an additional 15 million shares of Nikola stock to M&M and his spouse.  (Docs 5-4; 5-5 (SEC Form 4)).  In response to these transfers, Nikola moved the AAA for emergency relief "seeking a temporary restraining order and a preliminary injunction to maintain the status quo and prevent Milton from further selling or otherwise transferring his shares of Nikola stock until after the Arbitration." (Doc. 1 ¶ 13).  Milton ultimately "agreed that he would not sell any Nikola stock, directly or indirectly, during the pendency of the Arbitration absent at least seven (7) days' notice." (*Id*.)  Nikola then withdrew its emergency motion.  (Doc. 23-1).

---

[5] Milton is also a defendant in multiple pending civil actions that stem from the same misconduct at issue in the Criminal Case and AAA arbitration proceedings, including *Borteanu v. Nikola Corp., et al.*, No. 2:20-cv01797-SPL (D. Ariz., filed Sept. 15, 2020); *In re Nikola Corp. Derivative Litigation*, No. 20-cv-01277-CFC (D. Del., filed Sept. 23, 2020); *Huhn v. Milton, et al.*, No. 2:20-cv02437 (D. Ariz., filed Dec. 18, 2020); *In re Nikola Corp. Derivative Litig., Consol. C.A*. No. 2022-0023-KSJM (Del. Ch., filed Jan. 7, 2022); and *Hicks, et al. v. Milton, et al.*(D. Utah, filed Mar. 14, 2022).  (Docs. 1 at ¶ 17; 20 at 2 n.1).

On December 21, 2021, Nikola entered into a settlement with the SEC in which Nikola agreed to a $125 million fine (the "SEC Fine") to resolve certain claims against the Nikola. *See Nikola Corp.*, Securities Act Release No. 11018, Exchange Act Release No. 93838 (Dec. 21, 2021).

On November 17, 2023, the AAA issued the Arbitration Award in favor of Nikola holding Milton liable for breach of fiduciary duties. Arbitration Action, ECF No. 1-1. The AAA awarded Nikola a total of $167.7 million in damages as follows: $121.250 million for the SEC Fine, and approximately $46.477 million for legal and professional fees and expenses. (Doc. 20 at 3); *see also* Arbitration Action, ECF No. 1-1 at 127–33. Because Nikola had only paid $38 million of the $125 million SEC Fine, the AAA ordered Milton to pay $83.337 million of the $167.7 million award, with payment of the remaining $84.363 million contingent on Nikola' paying the outstanding balance of the SEC Fine. (Doc. 20 at 3); *see also* Arbitration Action, ECF No. 1-1 at 127.

On January 26, 2024, Milton—through M&M—sent Nikola a "Stockholder Notice of Intent to Nominate Persons for Election as Directors at the 2024 Annual Meeting of Stockholders of Nikola Corporation" (Doc. 5-6) (the "Nomination Letter"). Therein, Milton nominated five individuals for the Nikola Board in light of the fact that eight directors would expire at the annual meeting. (*Id*. at 2). At the time of Nomination Letter, M&M owned 51,047,726 million shares of common Nikola stock. (*Sealed* Doc. 5-6 at 2).

From February 22, 2024–March 13, 2024, Nikola's "Stock Activity Reports" show M&M has sold/transferred, over 37 million shares of Nikola stock (the "2024 Sales"). (*Sealed* Docs. 5-8; 5-10; 25). As of March 13, 2024, M&M owned 13,297,360 million shares of common Nikola stock.

**II.    Discussion**

Nikola argues Milton commenced various transfers and sale of stock to frustrate, hinder, and delay Nikola's ability to collect on the Arbitration Award. Nikola therefore request this Court to issue a TRO that:

/ / /

    (a)    enjoin[s] Milton from transferring or depleting any of his assets or property, wherever located, that is (i) directly or indirectly owned, held, or controlled by him, in whole or in part, for the benefit of, or subject to access by, or belonging to Milton; (ii) in the actual or constructive possession of Milton, or (iii) in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, limited liability company, partnership, trust, association, enterprise or any other entity directly or indirectly owned, managed or controlled by, or under common control with, Milton, without reasonable and adequate consideration after notice to Nikola, and from incurring any liabilities other than as required for the reasonable necessities of life; and

    (b) requir[es]   Milton to immediately disclose the identities of accounts, entities, or natural persons to which the shares were sold/transferred;

(Doc. 5 at 5). Nikola also seeks an order granting expedited discovery. (*Id.*) The Court will set forth the applicable legal standards before addressing each of Nikola's requests.

### A.  Legal Standard for Temporary Restraining Orders

Federal Rules of Civil Procedure 65(b) sets forth the procedural requirements for obtaining a TRO. The standards governing TROs and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). Preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and (4) that the public interest favors injunctive relief. *Id.* at 20. The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The last two factors merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for*

*the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (citations omitted).

### B.  Nikola Has Not Shown a Likelihood of Success on the Merits

Under the first *Winter* factor, Nikola argues it will likely prevail on its claim that Milton has violated Section 44-1004(A)(1) of the AUFTA, which provides the following:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor.

A.R.S. § 44-1001(A)(1). The AUFTA permits courts to consider the following non-exclusive factors to determine whether a debtor acts with actual intent for the purposes of Section 44-1004(A)(1):

(1)  [whether t]he transfer or obligation was to an insider.

(2)  [whether t]he debtor retained possession or control of the property transferred after the transfer.

(3)  [whether t]he transfer or obligation was disclosed or concealed.

(4)  [whether, b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5)  [whether t]he transfer was of substantially all of the debtor's assets.

(6)  [whether t]he debtor absconded.

(7) [whether t]he debtor removed or concealed assets.

(8) [whether t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) [whether t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) [whether t]he transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) [whether t]he debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 44-1001(B)(1)–(11). Arizona state courts commonly refer to these factors as "badges of fraud" and treat them as "signs or marks of fraud" from which intent may be inferred rather than required elements. *See Gerow v. Covill*, 960 P.2d 55, 63 (Ariz. Ct. App. 1998) (quoting *Torosian v. Paulos*, 313 P.2d 382, 388 (Ariz. 1957) (explaining the factors as "facts having a tendency to show the existence of fraud, although their value as evidence is relative and not absolute")). For example, a finding under a single factor may be sufficient to "stamp a transaction as fraudulent." *Torosian*, 313 P.2d at 388. However, "[e]ven when the factors above weigh in favor of finding fraud, they are nonetheless not conclusive" and "are merely indicia from which fraud may be inferred." *Airbus DS Optronics GmbH v. Nivisys LLC*, 2017 WL 1197105, *9 (D. Ariz. Mar. 31, 2017) (citing *Premier Financial Servs. v. Citibank*, 912 P.2d 1309, 1313, n.2 (Ariz. Ct. App. 1995)). In any event, an AUTFA plaintiff must present "clear and satisfactory evidence" of the defendant's fraudulent intent. *Id.* (citing *Gerow*, 960 P.2d at 63).

Nikola contends Milton's history of stock transfers in 2021 and recent stock sales in 2024 bear badges of fraud under factors one, two, four, eight, and ten. (Doc. 5 at 11). As to timing factors four and ten, Nikola argues that Milton's stock transfers to M&M and his spouse from August–November 2021 overlapped with his criminal conviction and the AAA arbitration proceedings. It further points out that Milton's 2024 Sales[6] occurred just

---

[6] Milton contends he cannot be held liable for the 2024 Sales under the AUFTA because

- 7 -

months after (a) the AAA rendered the Arbitration Award and (b) Nikola initiated the Arbitration Action in this district. (*Id*. at 12). Nikola also maintains that, based on Milton's Nomination Letter and 2024 Sales shortly thereafter, "there is reason to believe . . . that Milton [] did not receive adequate consideration in exchange for the Nikola stock he sold/transferred; [] sold/transferred the stock to a family member or business associate; [] and/or continues to retain possession or control over the Nikola stock." (*Id*. at 12). Counsel for Nikola clarified at the TRO Hearing that the chronology of events suggest Milton engaged in the 2024 Sales with either family members or trusted business associates who would vote in favor of his nominees at the annual meeting to interfere with Nikola's proxy contest, which implicate factors one, two and eight. (*See* Doc. 26). Nikola further posits that Milton's prior history of transferring Nikola stock to M&M and his wife bolsters the belief that Milton is transferring his assets to insiders for inadequate consideration to retain control over his assets while placing them outside of Nikola's reach. (*Id*. at 13).

Milton opposes, contending Nikola's argument for actual fraudulent intent is "pure conjecture." (Doc. 20 at 9). He takes issue with the lack of concrete evidence showing the 2024 Sale was made for inadequate consideration, and rebuts that his stock sales were necessary for general living costs and other legal fees. (*Id*. at 9, 13). In Milton's opinion, reliance on timing alone is insufficient to show fraudulent intent. (*Id*. at 9, 13). He further points out that the sales were not conducted in secret and were all publicly disclosed. (*Id*. at 9). At the TRO Hearing, Counsel for Milton argued that Nikola's theory regarding the Nomination Letter and 2024 Sales is wholly speculative, and the TRO Application seeks to prevent Milton from exercising his rights as a Nikola shareholder. (*See* Doc. 26). Counsel for Milton also firmly denied Nikola's allegation that the 2024 Sale were to

---

he was not a party to the sales. (Doc. 20 at 6–7). He argues it is rather M&M that executed the sale, and there is no basis to piece the corporate veil. (*Id*.) Because the Court will deny Nikola's TRO Application, the Court need not address this issue for the purpose of this Order. But in any event, the record shows that Milton is the sole managing officer of M&M (Doc. 23-1 at 2), and Milton uses M&M for the purpose of controlling Nikola Stock (*see e.g.* Doc. 5-6). *See Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010) ("A corporate entity will be disregarded, and the corporate veil pierced, [] if there is sufficient evidence that the corporation is the 'alter ego or business conduit of a person,' and disregarding the corporation's separate legal status is 'necessary to prevent injustice or fraud'").

insiders, and averred that Milton does not know any of the transferees. (*Id*.)

The Court agrees with Milton that, under the AUTFA's "clear and satisfactory" standard, Nikola's evidence does not rise to the requisite level to establish a likelihood of success on its AUFTA claim. *See Gerow*, 960 P.2d at 63. Nikola has indicated suspicions of fraud based on unusual trading activities and questionable timing, but has failed to back those suspicions up with adequate evidence. Despite Nikola's theory that the 2024 Sale was motivated by the Nomination Letter, there is no evidence in the current record demonstrating that the 2024 Sales were likely made to insiders for inadequate consideration. By its very nature, fraudulent conveyance matters require heightened standards to show established intent. *See e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (discussion the heightened pleading standards for allegations of fraud under Federal Rule of Civil Procedure 9). And the Court declines to find Nikola's hunches, without more, are sufficient evidence showing a likelihood of success on its AUTFA claim. The Court acknowledges that the current record contains inferences of potentially fraudulent transfers. However, this is not enough to entitle Nikola to the extraordinary remedy of injunctive relief. *See Winter*, 555 U.S. at 24. Because Nikola has not met its burden under the first *Winter* factor, the Court will deny its request for a TRO without addressing the remaining factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("If the moving party fails to show a likelihood of success on the merits, the court 'need not consider the remaining three *Winter* elements.' ").

**B.  Expedited Discovery is Warranted**

Nikola also moves for expedited discovery. Nikola represents its proposed discovery requests are "necessary to ascertain whether the Transfers are actually fraudulent." (Doc. 5 at 16). Nikola further maintains the burden on Milton to produce basic information about his assets is minimal. (*Id*. at 17). At the TRO Hearing, Counsel for Nikola stated that the proposed discovery sought would clarify (a) what transfers Milton made of Nikola shares to who and for what consideration; (b) Milton's relationship with those transferees; (c) the scope of Milton's total assets held; and (d) whether and to what

extent Milton has transferred any of his other assets. (*See* Doc. 26).

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). District courts within this circuit have required a showing of "good cause" when requesting expedited discovery. *BakeMark USA LLC v. Pastis*, 2024 WL 149727, *4 (D. Ariz. Jan. 12, 2024) (collecting cases). Although Nikola has not shown a likelihood of success on its AUTFA claim, the Court finds the inferences of potential fraud in the record constitute good cause for expedited discovery, especially in light of Nikola's allegation that Milton's 2024 Sale was motivated by his Nomination Letter. Upon review of Nikola's proposed discovery requests (Doc. 5-1), the Court finds the requests are reasonably tailored to Nikola's AUTFA claim. The Court, however, will limit the timeframe for which Milton is required to produce evidence of his assets in proposed request no. 8 to November 17, 2023 though the date of this Order. (*See id*. at 10). The Court will also broaden the definition of the term "Transfers" therein to include the March 6–13, 2024, transfers as described in (*Sealed* Doc. 25). (*See id*. at 3 ¶ 2). These changes are reflected in Exhibit A to this Order.

Accordingly,

**IT IS ORDERED** that Plaintiff Nikola Corporation's "Application for Temporary Restraining Order and Expedited Discovery, and Order to Show Cause RE: Preliminary Injunction" (Doc. 5) is **denied** as to Plaintiff's request for a TRO, but **granted** as to Plaintiff's request for expedited discovery.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that Defendant Trevor R. Milton shall respond to Plaintiff's Court approved discovery requests attached as Exhibit A to this Order and file a notice of service with the Court **by April 3, 2024**.

Dated this 26th day of March, 2024.

*[Signature]*
Honorable Diane J. Humetewa
United States District Judge

# EXHIBIT A – EXPEDITED DISCOVERY REQUESTS

**I.     Definitions**

1.  "Shares" means the approximately 30 million shares of Nikola stock that are the subject of the Transfers.

2.  "Transfers" means the transfer of over 22 million shares of Nikola stock occurring between February 22, 2024 and February 29, 2024, the transfer of over 7.9 million shares of Nikola stock occurring between February 29, 2024 and March 6, 2024, and the transfer of over 7.4 million shares of Nikola stock occurring between March 6, 2024 and March 13, 2024 as described in (*Sealed* Docs. 5-8; 5-10; 25).

3.  "Verified Complaint" or "Complaint" means the Verified Complaint filed in this action including any attachments or exhibits thereto, as well as any and all amendments thereto.

4.  "You" or "u" refers to Trevor R. Milton, your affiliates, agents, representatives, employees, or other persons acting on your behalf.

5.  "Communication" means every manner of transmitting, transferring, exchanging or sharing information, facts, opinions or thoughts in any form, whether orally, in writing or otherwise, by any means whatsoever, including, without limitation, by memorandum, letter, note, mail, telephone, facsimile transmission, telex, telecopy, email, or any other means.

6.  "Concerning" means in connection with, referring to, referencing, reflecting, describing, discussing, evidencing, supporting, indicating, containing, stating, mentioning, embodying, pertaining to, setting forth, commenting on, assessing, records, constituting, comprising, touching upon, summarizing, or having any logical or factual connection whatsoever to the subject matter in question.

7.  "Document" means any kind of written or graphic matter, however produced and reproduced, including both hard-copy and computer or electronic data (including but not limited to email, instant messages, and text messages), and any matter written or

produced by hand, typed, recorded, taped, photocopied, filed, telecopied, filmed, microfilmed, transcribed or electronic computer data, otherwise created, generated or prepared, and including all originals, masters, drafts and non-identical copies bearing notations or marks not found on the originals, whether sent or received, and including without limitation any and all written communications, correspondence, memoranda, drafts, notes, diaries, cards, letters, statistics, summaries, analyses, submissions, applications, forms, reports, sketches, drawings, designs, specifications, telegraphs, minutes, agendas, schedules, contracts, agreements, addenda, studies, files, affidavits, financial records, account statements, checks, check stubs, general ledgers, calculations, journals, ledgers, purchase orders, invoices, receipts, bills, bills of lading, brochures, manuals, pamphlets, books, magazines, articles, instructions, directions, directives, rules, regulations, policy books, guidelines, work plans, questionnaires, surveys, licenses, vouchers, blueprints, notebooks, catalogues, bids, prospectuses, transcripts, stenographic or handwritten notes, regulatory reports or filings, publications, circulars, pictures, photographs, videotapes, films, computer printouts, computer disks, computer tapes, computer data, computer memory, emails, affidavits, declarations, expenses records, logs, voice recordings, charts, compilations, press releases, resumes, inter-office and intra-office communications, offers, bulletins, worksheets, papers, graphs, microfiche, microfilm, motion pictures, audio tapes, cassettes, discs, including, but not limited to, CD ROMS and DVDS, PDA and smartphone data, text messages, or instant messages, and any other data compilations of any kind or in any other form capable of being read, heard or otherwise understood. A draft or non-identical copy, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments or attachment to different documents or for any other reason, is a separate document within the meaning of this term.

   8.  The terms "<u>identify</u>" or "<u>describe</u>" or state the "<u>identity of</u>" mean:

a. as to a person, to state the full name, present business and home addresses, present business and home telephone numbers and present or last known position in business;

b. as to a firm, partnership, corporation or any other form of business entity, to state the full name, address and telephone number;

c. as to a document, to describe the type of document (e.g., letter, statement, memorandum, e-mail, telegram, notes of telephone conversation, etc.), its date, the identity of the sender(s) and recipient(s) and its present location and custodian. In lieu of providing the information described above, a copy of the document can be produced. As to a document which was, but is no longer in your possession or subject to your control, you should also state what disposition was made of it and the particulars of its present location; and

d. as to any communication, to state the type of communication (e.g., oral, written, e-mail, etc.), the date and substance of such communication, the identity of the participants and any documents evidencing or supporting such communication.

9. The terms "relate to" or "relating to" mean: pertains to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

**II.  Instructions**

1. "And" and "or" shall be construed both disjunctively and conjunctively, as necessary, to bring within the scope of these Requests all responses which might otherwise be considered to be beyond their scope.

2. "Any" and "all" shall be construed as "any and all," and the term "each" shall be construed as "all and each."

3. "Including" shall mean including, without limitation.

4. The singular form of a word shall be construed as a plural, and the plural as the singular, as necessary to bring within the scope of these Requests all documents and responses which might otherwise be considered to be beyond their scope.

5. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of these Requests all documents and

responses which might otherwise be considered to be beyond their scope.

6. The use of capital letters, lower case letters, apostrophes, or quotation marks in these Requests shall not be construed to limit the scope of any specific Request contained herein.

7. These Requests are intended to cover all documents, communications and Electronically Sored Information ("ESI"), as well as metadata associated with responsive ESI, in Your possession, or subject to Your custody and control, whether directly or indirectly, including documents, communications and ESI held at any point on any device (laptops, phones, USB drives, iPads or anything else that holds ESI), and documents, communications and ESI in the possession of Your attorneys, representatives, agents, investigators, and all other persons or entities working on Your behalf.

8. If You contend that any Document or ESI responsive to the Request cannot be produced for any other reason, state with specificity the basis for Your contention.

9. In the event that any document or portion of any document within the scope of these Requests is withheld from production upon a claim of privilege, work product, or for any other reason, you are requested to furnish, with respect to each such document, the following:

    a. A statement regarding the basis for the claim of privilege, work product, or other forms of non-disclosures; and

    b. A description of the document, including:

        i. The title of the document and the nature and subject matter of its contents;

        ii. The date the document was prepared or any date appearing on the document;

        iii. The number of the document's pages, attachments, and appendices;

        iv. The names of the persons who authored or prepared the document, and an identification by employment and title of each such person;

        v. The names of each person to whom the document, or a copy thereof, was sent, shown, or made accessible, or to whom it

was explained, together with an identification of each such person; and

vi. The number of each paragraph of these Requests to which the document relates.

10. In the event that you object to the production of any document responsive to a particular Request by asserting that a portion of the Request is overbroad, irrelevant, or burdensome, you are requested to produce those documents that are responsive to the portion of the Request to which you do not object.

11. Where an objection is made to any Request or any subpart thereof, the objection shall state with specificity all grounds. No part of a Request shall be left unanswered merely because an objection is interposed to another part of the Request.

12. The documents produced in response to these Requests shall be produced as they are kept in the ordinary course of business and shall be organized so that Plaintiff can ascertain the files in which they were located, their relative order in such files, and how such files were maintained.

13. Each and every non-identical duplicate of a document within the scope of any Request, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments, or attachment to different documents, or for any other reason is a separate document to be produced in response hereto.

14. Any document that is attached by staple, clip, or otherwise to a document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein.

15. Documents are to be produced in full and unexpurgated form without abbreviation or redaction, subject to Instruction No. Error! Reference source not found.

16. Each of these Requests seeks all documents, wherever located, which are in your actual or constructive possession, custody, or control or in the actual or constructive possession, custody, or control of your present or former attorneys, financial advisors, accountants, bookkeepers, agents, representatives, directors, officers, partners, shareholders, or employees, as well as all documents which are known to exist and can be

obtained by you from any other source.

16. These Requests are continuing in nature and oblige you to produce promptly additional documents or information whenever they are acquired, discovered, or come into existence after the date of the initial production.

17. Unless otherwise specified, the period covered by these Requests is from (and includes) November 17, 2023 to the present.

**III.   Requests**

1. All documents, communications, and correspondence relating to the Transfer.

2. Documents and communications sufficient to identify the recipient(s) of the Shares resulting from the Transfer, whether entities or natural persons.

3. Documents and communications sufficient to identify the entity(ies) or person(s) maintaining control over the Shares.

4. Documents and communications sufficient to show the ownership, affiliate, representative, or personal relationship, if any, between You and the recipient of the Shares.

5. Documents and communications sufficient to show the ownership, affiliate, representative, or personal relationship, if any, between You and the entity(ies) or person(s) maintaining control over the Shares.

6. Documents and communications sufficient to show the value of the consideration You received in connection with the Transfers.

7. Documents and communications relating to any negotiation, discussion, or contemplation of the consideration to be received by You or an entity or another person resulting from the Transfers.

8. Documents and communications sufficient to show the entire extent of Your assets and liabilities, including but not limited to Your monthly income and expenses. For the avoidance of doubt, the relevant time period for this Request is from November 17, 2023 through the date of this Order.