**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikola Corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Trevor R Milton,<br><br>　　　　　Defendant. | No. CV-24-00563-PHX-DJH<br><br>**ORDER** |

  In accordance with the Court's April 25, 2024, Order (Doc. 40), Plaintiff Nikola Corporation ("Nikola") and Defendant Trevor R. Milton ("Milton") have filed a Joint Notice of Discovery Dispute (Doc. 42) regarding the scope of a protective order.[1]  While the parties agree to a number of terms that should govern, they disagree on how materials designated as "Confidential" or "Confidential–Attorneys' Eyes Only" ("AEO") should be handled.  (*Id*. at 2–3).  Upon review of the parties' respective proposed orders (Docs. 42-1 (Nikola's proposed order); 42-2 (Milton's proposed order)), the Court will issue a protective order that includes the Court's discovery dispute protocol, combines the language from both parties' proposed subparagraph 1(b), and otherwise adopts the language from Milton's proposed order.  The Court will also order Milton to respond to Nikola's Request for Productions ("RFPs") Nos. 1–8 (*see* Doc. 29 at 17), as his response deadlines were made contingent on issuance of a protective order (*see* Docs. 40; 43).

/ / /

---

[1] The parties agree that entry of a protective order is necessary to govern expedited discovery in this matter. (*See* Docs. 29; 40; 43)

**I.    Legal Standard**

Parties seeking discovery are entitled to "any nonprivileged matter that is relevant to [the] party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Federal Rule of Procedure 26 permits a district court, for good cause, to issue an order that *inter alia* "specif[ies] terms. . . for the disclosure or discovery;" "limit[s] the scope of disclosure or discovery to certain matters;" and/or "require[s] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . ." Fed. R. Civ. P. 26(c)(1). For good cause to exist, "the party seeking a protective order must show specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[2] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal citation omitted). Rather, the party seeking protection must make a "particularized showing of good cause with respect to [each] individual document." *Hodge v. Shulkin*, 2018 WL 11337163, *1 (D. Ariz. Oct. 18, 2018) (quoting *San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown.")).

**II.    Discussion**

In this dispute, the parties are attempting to reach an agreement on a protective order to govern expedited discovery of Milton's confidential, personal financial information. The parties' proposed orders establish two levels of designated protected materials: Confidential and AEO. (*See* Docs. 42-1 at ¶ 1; 42-2 at ¶ 1). The parties appear to agree that material should be designated as Confidential at the first level when, "in the good faith belief of such Party and his or its counsel, the disclosure of such information could be

---

[2] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

harmful to the business or personal affairs of such Party." (Docs. 42-1 at ¶ 1(a); 42-2 at ¶ 1(a)). However, the parties' respective drafts differ on the following points: (1) what information merits AEO protection at the second level (*compare* Doc. 42-1 at ¶ 1(b) *with* Doc. 42-2 at ¶ 1(b)); (2) who should have access to AEO materials (*compare* Doc. 42-1 at ¶¶ 3, 7 *with* Doc. 42-2 at ¶¶ 3, 7); and (3) the scope in which all protected materials should be used (*compare* Doc. 42-1 at ¶ 15 *with* Doc. 42-2 at ¶ 15). The Court will address each issue in turn.

### A. Designation of AEO Materials

First, the parties' proposed orders include different standards to determine what information merits AEO designation. Nikola proposes a harm assessment should govern AEO designation in its proposed subparagraph 1(b):

> A designation of "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be made by any Producing Party *only after such Party has made a good faith determination that the information or documents include or constitute confidential and proprietary information which, if disclosed to the other Party, rather than to his or its counsel, could result in injury or harm to the Producing Party's interests,* including but not limited to documents or information containing or referring to trade secrets or other confidential and/or proprietary information, technical research, design documents and business or financial information.

(Doc. 42-1 at ¶ 1(b) (emphasis added)). Milton argues, without citing to any supporting authority, that a harm assessment is "unnecessary and impracticable[.]" (Doc. 42 at 3). Milton omits such language from his proposed subparagraph 1(b) and puts forth a more lenient standard:

> Designation of "CONFIDENTIAL – ATTORNEYS' EYES ONLY": Any party may designate information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" *if, in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party,* including but not limited to trade secret or other confidential research, development, financial, customer related data or other commercial information.

(Doc. 42-2 ¶ 1(b) (emphasis added)).

The Court finds that Nikola's proposed harm assessment requirement better aligns with the policies underlying Rule 26 because it requires a particularized showing of harm in order for material to be designated as AEO. *See Hodge*, 2018 WL 11337163 at *1. Without more, Milton's proposed standard—i.e., that material considered to be "most sensitive" should be AEO protected—is too broad to satisfy the Rule 26(c) test. *See Beckman*, 966 F.2d at 476. Nonetheless, the Court finds that AEO material at level two should still be described as "most sensitive" to further distinguish it from materials protected as Confidential at level one. Therefore, the Court will issue a protective order that combines both parties' subparagraph 1(b). (*See* Docs. 42-1 at ¶ 1(b); 42-2 at ¶ 1(b)).

### B.   Access to AEO Materials

The parties also disagree about who should be able to access AEO materials. The parties appear to agree that Nikola's outside counsel, and those working with them, should have access. (Docs. 42-1 ¶¶ 3, 7; 42-2 ¶¶ 3, 7). Nikola additionally proposes that all witnesses, deponents, and Nikola's in-house counsel should have access to AEO designated materials. (Docs. 42-1 ¶¶ 3, 7). Milton argues that allowing any and all witnesses and deponents access to AEO material would defeat the inherent purpose of the protection. (Doc. 42 at 3). Milton further asserts that, "[e]xpanding access to in-house counsel is unworkable here because Nikola's primary in-house counsel (Britton Worthen ["Worthen"]) is the same individual who verified Nikola's complaint in this action" and "is a co-defendant (along with Mr. Milton and other Nikola executives) in pending shareholder litigation." (*Id.*). The Court agrees with Milton in both respects.

As the party seeking a protective order that limits the information he must produce, Milton bears the burden of showing that witnesses, deponents, and Nikola's in-house counsel should not have access to the AEO documents. *See Phillips*, 307 F.3d at 1210–11; *see also Barnes and Noble, Inc. v. LSI Corp.*, 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012) ("The party seeking a protective order has the burden of showing that the protection is warranted.") (citing Fed. R. Civ. P. 26(c)). To start, the Court agrees with Milton that to allow *all* witnesses and deponents access to AEO designated material would defeat the

very purposes of the provision. As to Nikola's in-house counsel, the issue is whether Worthen should be considered a Nikola attorney or a Nikola corporate representative such that Worthen's and other in-house counsel's access to AEO designated material would result in prejudice or harm to Milton.

Nikola contends no basis exists to preclude in-house counsel from access because this is not a litigation involving protected intellectual property or risk of competitive harm, and precluding such access "would prevent Nikola's outside counsel from meaningfully conferring with its client regarding the prosecution of this action." (Doc. 42 at 2). It cites to *U.S. Steel v. U.S. Int'l Trade Comm'n* for the proposition that " 'status as in-house counsel cannot alone create [the] probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access' to confidential information." (*Id*. (quoting 730 F.2d 1465, 1469 (Fed. Cir. 1984)).[3] However, *U.S. Steel* went on to hold that "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." 730 F.2d at 1468.

Here, the Court agrees that Worthen's role as Nikola's in-house counsel is blurred due to the nature of his participation in this action and his role as a co-defendant in other Nikola shareholder actions. Indeed, Worthen verified the Complaint (Doc. 1) in this matter as follows:

> I, Britton Worthen, . . . am Chief Legal Officer of Nikola Corporation []. I am authorized by Nikola to execute this Verification. . . . I have read the foregoing Verified Complaint and know its contents, and I certify under penalty of perjury and pursuant to the laws of the State of Arizona that the preceding is true and correct to the best of my knowledge and belief.

(Doc. 1 at 12). Worthen's verification of factual allegations in this action demonstrates he is functioning as a corporate representative of Nikola, which is more akin to a client than an attorney. Moreover, Milton's representation that Worthen is a co-defendant in pending

---

[3] The Ninth Circuit has referred to *U.S Steel* as "the leading authority on protective orders distinguishing between outside and in-house counsel." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Nikola shareholder litigation raises a risk that Worthen will have in interest in the protected information beyond the current litigation. So, the Court finds Milton has satisfied the Rule 26(c) test in showing prejudice or harm will result if Nikola's in-house counsel is allowed access to AEO designated material. *See Phillips*, 307 F.3d at 1210–11. The Court will therefore adopt Milton's proposed paragraphs 3 and 7 in the protective order to limit access to AEO designated material to Nikola's outside counsel. (*See* Doc. 42-2 at ¶¶ 3, 7).

### C. Use of Protected Materials

Last, the parties' proposed orders differ as to the scope in which protected materials may be used. Nikola seeks preemptive permission to disclose protected information in other related actions while Milton argues such material should be limited to use in this action only. (*Compare* Doc. 42-1 at ¶ 15 *with* Doc. 42-2 at ¶ 15). Nikola argues that, because "the current matter was brought in connection with Nikola's action to confirm an arbitration award against Milton," "Nikola should be able to use any discovery produced in this case in that action as well." (Doc. 42 at 2). Milton objects that "Nikola's proposed order allows the use of confidential information (i) in any 'related action' without restriction and without identifying what those actions are, and (ii) by experts and consultants engaged by Nikola's counsel but without limitation to this action." (*Id*. at 3).

The Court agrees with Milton that the information he must produce in this action should be limited to the current litigation. "Protective orders usually include provisions indicating that specific confidential information may be used only for purposes of current litigation. . . . as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation." *Smith v. Legacy Partners Inc.*, 2022 WL 1136787, at *2 (W.D. Wash. Apr. 18, 2022) (citing *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)). The Court acknowledges that Nikola has filed a petition to confirm an arbitration award it obtained against Milton by way of a separate action that is also pending before this Court. *See Nikola Corporation v. Milton*, 2:23-cv-02635-DJH, ECF No. 1 (D. Ariz. Dec. 18, 2023). However, at this juncture, Nikola has not sufficiently articulated how Milton's confidential, personal financial

information that is relevant to its claim under the Arizona Uniform Fraudulent Transfer Act, A.R.S. § 44-1101, in the current litigation is also relevant to Nikola's petition for confirmation of an arbitration award in another litigation. In the event that this Court—or any other court—rules that material protected in this case should be allowed in another case, Nikola may seek a modification of the protective order at the appropriate time. *See Smith*, 2022 WL 1136787, at *4 (citing *Foltz v. State Farm Mut. Automobile Ins. Co.*, 331 F.3d 1122, 1132–33 (9th Cir. 2003) ("collateral litigant must demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein")). The Court will therefore adopt Milton's proposed paragraphs 15 in the protective order. (*See* Doc. 42-2 at ¶ 15).

### III. Conclusion

By separate, concurrent Order, the Court will issue a protective order that includes Nikola's harm assessment standard for AEO designations (Doc. 42-1 at ¶ 1(b)) but otherwise adopts Milton's proposed language (Doc. 42-2). The protective order will also include the Court's discovery dispute protocol.

Accordingly, and because the Court has made Milton's responses to Nikola's RFP 1–8 contingent on the Court's issuance of a protective order (*see* Docs. 40; 43),

**IT IS ORDERED** that Milton shall produce documents responsive to Nikola's RFP Nos. 1–6 **within seven (7) days of the issuance of this Order.**

**IT IS FURTHER ORDERED** that, in accordance with the Court's April 30, 2024 Order (Doc. 43), Milton shall produce documents responsive to Nikola's RFP No. 7 **within 24 hours of the issuance of this Order.**

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS FINALLY ORDERED** that, in accordance with the Court's April 30, 2024 Order (Doc. 43), Milton shall respond to Nikola's RFP No. 8 as follows: Milton shall produce information showing the beginning and ending amounts of his bank balances on a monthly basis from November 17, 2023 to March 27, 2024 **within 24 hours of the issuance of this Order**; and Milton shall produce any additional information required to show the entire extent of his assets and liabilities **within twenty-one (21) days of the issuance of this Order**.

Dated this 2nd day of May, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge